IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 1:22-cv-02728-MDB

**STEVEN M. WREN, individually,**

                    Plaintiff,

v.

**EL PASO COUNTY SHERIFF'S OFFICE; EL PASO COUNTY, COLORADO; SHERIFF BILL ELDER, individually and in his official capacity with the El Paso County Sheriff's Office; LIEUTENANT BILL HUFFER, individually and in his official capacity with the El Paso County Sheriff's Office; DEPUTY SCOTT BRETTELL, individually and in his official capacity with the El Paso County Sheriff's Office; DEPUTY NICHOLAS WITHERITE, individually and in his official capacity with the El Paso County Sheriff's Office; and DEPUTY JEREMY JUHL, individually and in his official capacity with the El Paso County Sheriff's Office.**

                    Defendants.

**SCHEDULING ORDER**

## 1. DATE OF CONFERENCE AND APPERANCES OF COUNSEL AND PRO SET PARTIES

The Rule 16(b) Scheduling Conference will not be scheduled unless the Court determines that a Scheduling Conference is necessary.

Counsel participating in drafting of this Scheduling Order are:

| **Attorney for Plaintiff** | **Attorney for Defendants** |
|---|---|
| Zachary P. Mugge | Bryan E. Schmid |
| Antero Law, LLC | El Paso County Attorneys Office |
| 1700 Broadway, Suite 640 | 200 South Cascade Avenue |
| Denver, CO 80290 | Colorado Springs, CO 80903 |
| Telephone: 720-990-5530 | Telephone: 719-520-7032 |
| E-mail: zmugge@anterolaw.com | Email: BryanSchmid@elpasoco.com |

## 2. STATEMENT OF JURSISIDCTION

Jurisdiction and venue are proper in this Court because the incident herein described occurred in Colorado, Plaintiff resides in Texas, the Defendants reside in Colorado, and the amount in controversy exceeds $75,000. Therefore, this Court has jurisdiction under 28 U.S.C. § 1332(a)(1).

## 3. STATEMENT OF CLAIMS AND DEFENSES

(a) Plaintiff: Plaintiff Steven Wren has asserted claims of negligence and willful and wanton conduct against the Defendants due to injuries Mr. Wren suffered on October 18, 2019 when El Paso County Sheriff's Office ("EPSO") employees recklessly initiated and continued a high-speed chase of a suspect driving a stolen vehicle, which ended in a multi-vehicle crash. More specifically, on October 18, 2019, EPSO employees pursued a stolen truck driven by Kaleb Miles for nearly one hour all across El Paso County, starting in Falcon and going into the city limits of Colorado Springs. During the lengthy pursuit, the suspect and EPSO employees frequently reached speeds of approximately 80-100 miles per hour, drove the opposite direction into oncoming traffic on El Paso County and City of Colorado Springs roads, crossed over medians and sidewalks, ran through red lights and other traffic signals, and swerved in and out of traffic along the way. The pursuit occurred on a Friday afternoon and traffic conditions were heavy with civilian vehicles throughout much of the chase. The pursuit resulted in not one, not two, but three

2

separate multi-car crashes at major Colorado Springs intersections, leaving a trail of wreckage and injured victims along the way.

Mr. Wren happened to be sitting in his vehicle while stopped at a red light at the intersection of North Academy Boulevard and Austin Bluffs Parkway in the City of Colorado Springs when the stolen truck driven by Kaleb Miles came barreling down Austin Bluffs Parkway travelling westbound in the eastbound lanes and blew through a red light at a high rate of speed into cross-traffic travelling with the green signal, all while two EPSO vehicles driven by Deputy Scott Brettell and Nicholas Witherite, respectively, continued in pursuit. Mr. Miles's truck rammed into a vehicle driving through the intersection, careened diagonally across the intersection, bashed into a vehicle that was stopped at the red light, and then continued forward before slamming into the driver's side of Mr. Wren's vehicle and coming to a final rest. Seconds later, Deputies Brettell and Witherite sped through the same intersection and rammed Mr. Miles's truck to pin the vehicle in and take Miles into custody.

Several people involved in the lengthy high-speed pursuit suffered injuries in the three separate collisions that occurred along the way, including Mr. Wren, EPSO employees, and innocent civilians. Mr. Wren, who was working in the course and scope as a police officer/detective with the Colorado Springs Police Department at the time of the collision, was transported to the Stetson Hills Colorado Springs Police Station and then transported to Memorial North Hospital, where he was diagnosed with multi-level compression fractures at levels T5, T11, and T12 of his Thoracic spine. As a result of the injuries Mr. Wren suffered in this collision, the Fire and Police Pension Association determined Mr. Wren suffered a Permanent Occupational Disability, and Mr. Wren, who was 37 years old at the time of the collision, was no longer able to continue working.

(b) Defendants: On October 18, 2019, at 12:46 p.m., Defendant, EPSO's dispatch operator received a report of a male and female suspect stealing gas from cars in the Safeway parking lot in Falcon, CO. The reporting party ("RP") knew of the suspects because they matched the description of the suspects who stole gas from the RP's wife On October 11, 2019. The RP advised dispatch that the suspects were driving a Nissan pickup truck that had been spray painted red and blue and without a license plate; they were stealing gasoline from a Dodge RAM pickup by drilling a hole(s) in its tank and filling portable gas cans and that he was observing the activity from a distance. Dispatch advised the RP to maintain his distance and be sure he was safe because *the suspects were believed to be armed and dangerous*.

The suspect, identified as (Non-Party at Fault) Kaleb Miles ("Miles") was well known to EPSO Deputies as earlier in the day, prior to the October 18, 2019 gasoline theft, the stolen truck was spotted in the area of McClaughlin Rd. and Highway 24 and Deputies initiated a pursuit, However, a short time later Deputies lost sight of the stolen pickup and the pursuit was called off. Deputies knew Miles to be the suspect in multiple vehicle thefts as well as several attempted and successful armed robberies and *knew him to be armed and dangerous.* In fact, Miles was the suspect of a carjacking incident involving the Nissan truck he was now driving in which he reportedly brandished a shotgun to the owner of the Nissan truck before fleeing in the Nissan truck.

As EPSO deputies were arriving at the scene of the gas theft (approximately 1:01 p.m.), they observed Miles leaving the Safeway parking lot in the stolen Nissan pickup truck spray now partially spray painted red and blue. Based on the multiple occasions where Miles previously fled from EPSO Deputies and the nature of those pursuits, Sgt. Robblee, the initial supervisor on scene, requested unmarked vehicles respond to the area so that they could follow the stolen pickup Miles

4

was driving. Sgt. Robblee also requested response from the Colorado State Patrol ("CSP") as they have increased capabilities of stopping a fleeing vehicle should it become necessary.

After seeing an EPSO patrol vehicle on Highway 24, Miles turned onto eastbound Judge Orr Rd. and accelerated to a high rate of speed. A pursuit was initiated by the Deputies and vehicles following Miles but was called off shortly thereafter when Deputies lost sight of the Miles vehicle in the area of Curtis Rd. and Jones Rd. A short time later, Sgt. Robblee observed Miles on Southfork Drive and reinitiated the pursuit. The pursuit continued onto westbound Falcon Highway where after observing Miles attempting to elude him by passing cars going westbound by driving into the eastbound lanes. As Sgt. Robblee began to back off the pursuit Miles passed an unmarked vehicle that was also westbound on Hwy 24 and the unmarked vehicle activated its lights and siren and picked up the pursuit. Sgt. Robblee turned off from the pursuit in an effort to get ahead of the pursuit by taking an alternate route, but Deputies once again lost sight of the Miles vehicle.

During a canvas of the area Miles was spotted again approximately 10 minutes later and the pursuit was reinitiated. Miles continued to attempt to allude EPSO Deputies by driving towards Colorado Springs on Hwy 24 near Constitution. Sgt. Robblee's attempt to block him at Hwy 24 and Marksheffle Rd. resulted in Miles maneuvering around the Robblee vehicle and returning towards town. Sgt. Robblee lost sight of the Miles vehicle but continued to monitor the pursuit. The pursuit of Miles continued into Colorado Springs and he was observed to have run the red light at Barnes and Powers and at Barnes and Chaparral. Due to the increasing amount of traffic and how reckless Miles was driving Lt. Huffor who was pursuing Miles in his unmarked Jeep Cherokee advised that as soon as he had an opportunity he was going to attempt to ram the Miles vehicle to stop the pursuit.

5

At Barnes and Austin Bluffs Parkway, Lt. Huffor observed the Miles vehicle come to a near stop as if he were stopping for the red light. Lt. Huffor determined that was the location where he would attempt to stop the pursuit by disabling the Miles vehicle. Lt. Huffor rammed the Miles vehicle in a way where he believed it would keep it from hitting the other vehicles surrounding it. Upon impact Lt. Huffor's airbag deployed and he lost control of his vehicle. The maneuver by Lt. Huffor failed to disable the Miles vehicle but did disable Lt. Huffor's Jeep. Lt. Huffor exited his disabled vehicle in an attempt to take Miles into custody but saw the Miles fleeing the crash location and hitting several civilian vehicles that were around him as he left. Miles then fled by driving westbound on Austin Bluffs in the eastbound lanes. Deputy Witherite, who observed the collision between the Miles vehicle and Lt. Huffor's Jeep took up the pursuit and followed Miles as he took an immediate left from Austin Bluffs onto Date St. and continue westbound on Date St. The Miles vehicle then turned right onto Sifert and as it was attempting to turn left back onto Austin Bluffs it struck a white truck. At that same time, Deputy Juhl attempted to pin the Miles vehicle in but was unable to and the Juhl patrol vehicle was disabled in the process.

Deputy Witherite continued to pursue the Miles vehicle westbound on Austin Bluff where seconds later the Miles vehicle was observed to run the red light at Austin Bluffs and North Academy Blvd. Deputy Witherite observed the Miles vehicle then crash into several vehicle within the Austin Bluffs and North Academy intersection and finally come to rest after impacting the driver's side of the Plaintiff's vehicle which was stopped at the red light for eastbound Austin Bluffs traffic. Deputy Witherite reported that over his siren he could hear the engine of the Miles vehicle revving up and observed Deputy Brettell drive his patrol vehicle into the driver's door of the Miles vehicle and he followed by driving into the rear of the Miles vehicle successfully immobilizing the Miles vehicle. Deputy Witherite exited his vehicle, jumped onto the hood of

Deputy Brettell's vehicle and began extricating Miles through the driver's door window where upon information and belief he was assisted by Plaintiff, an on-duty CSPD Detective. Miles was taken into custody by Deputy Witherite and Deputy Juhl who had arrived at the scene on-foot tool the female passenger into custody.

Defendants assert that the pursuit in which Defendants Lt. Huffor and Deputies Juhl, Witherite and Brettell participated, was necessary due to the *armed and dangerous* felony suspect driving the stolen red and blue Nissan pickup truck and that their individual participation within the pursuit did not violate EPSO policies and procedures for pursuing an armed robbery and carjacking suspect. Defendants also assert that they considered the potential danger to the traveling public and the reasonableness of continuing the pursuit in light of the known felonious conduct of Miles and determined that continuing to pursue Miles in order to effect his apprehension was the appropriate decision. Thus, even if Plaintiff produces some evidence that continuing the pursuit of the armed robbery and carjacking suspect was ill-advised, the conduct of EPSO employees involved in the pursuit does not and cannot rise to the level of willful and wanton conduct. Defendants have also raised the affirmative defense that Plaintiff assumed the risk of his own conduct by intentionally driving his unmarked CSPD vehicle to the area in which Miles was known to be heading, thereby assuming the risk that he was placing his vehicle and himself in harm's way. Finally, Defendants dispute the nature and extent of the injuries claimed by Plaintiff.

## UNDISPUTED FACTS

The following facts are undisputed:

1. On October 18, 2019, EPSO was involved in a pursuit involving Kaleb Miles.

2. During said pursuit, three (3) separate multi-car crashes occurred within the City of Colorado Springs, Colorado.

3. People, other than the Plaintiff, are alleged to have suffered injuries in the three separate crashes which occurred during EPSO's pursuit of Miles.

4. Mr. Wren alleges he suffered injuries in the last multi-vehicle crash that occurred during EPSO's pursuit of Miles.

### 4. COMPUTATION OF DAMAGES

**Plaintiff:**

1. Economic damages for past medical expenses (over $10,000.00), past and future wage loss (amount to be determined by expert witness), out of pocket expenses, and anticipated future medical expenses (amount to be determined by expert witness).

2. Non-Economic Damages for pain and suffering; emotional distress; anxiety; sleeplessness; grief; fear; loss of enjoyment and quality of life; and inconvenience in an amount to be determined at trial.

3. Physical Impairment and Disfigurement damages for ongoing pain, permanent injuries/whole person impairment, and limited range of motion in an amount to be determined at trial.

4. All recoverable pre- and post-judgment interest in an amount to be determined.

5. Any other provable detriment.

**Defendants:**

1. All damages and injuries suffered by Plaintiff in the collision with Miles' vehicle, if any occurred, were the direct and proximate cause of conduct on the part of Miles as he was *per se* negligent in running the red light at Austin Bluffs Pkwy and North Academy Blvd., thereby causing the multi-vehicle collision which culminated with Miles' vehicle striking and coming to rest against the driver's side of Plaintiff's unmarked CSPD vehicle. Therefore, any damages and injuries suffered by Plaintiff, if any occurred, are precluded or reduced against the County Defendants pursuant to C.R.S. § 13-21-111.5(3)(b).

2. Plaintiff failed to mitigate or minimize any and all damages and injuries suffered in the

October 18, 2019 collision with Miles' vehicle, if any occurred, thereby precluding or reducing the amount f damages he may be entitled to from the Defendants.

3. The injuries complained suffer by Plaintiff following the collision with the Miles vehicle, if any occurred, pre-existed that October 18, 2019 collision.

4. The maximum damages that may be recovered by the Plaintiff from the County Defendants, collectively, in their individual and official capacities is limited to the sum set forth in C.R.S. § 24-10-114.

5. The Plaintiff's damages, if any occurred, are barred or limited by the provisions of C.R.S. §13-21- 102.5 (limitations on damages for non-economic loss or injury).

6. The Plaintiff's damages are barred or limited by the collateral source rule of C.R.S. §13-21- 111.6.

7. Defendants dispute the nature and extent of the Plaintiff's damages as well as the causation of any claimed damages and/or injuries.

### 5. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a. Date of Rule 26(f) meeting February 2, 2023.

b. Names of each participant and party he/she represented

**Zachary P. Mugge represented Plaintiff.**

**Bryan Schmid and Chris Strider represented Defendants.**

c. Statement as to when Rule 26(a)(1) disclosures were made or will be made

**Rule 26(a) (1) disclosures will be made on or by February 28, 2023.**

d. Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).

**None.**

e. Statement concerning any agreements to conduct informal discovery:

**There is no agreement to conduct informal discovery at this time.**

f. Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.

**The parties have agreed to use a unified numbering system for deposition and trial exhibits.**

g. Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

**It is unlikely that the parties will need extensive electronic discovery.**

h. Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

**The parties have discussed the possibility of prompt settlement or resolution of the case. Defendants maintain that they complied with EPSO policies and procedures and are thus not liable for Plaintiff's injuries. Defendants also challenge the nature and extent of Plaintiff's injuries. As such, Defendants are not inclined to enter settlement discussion at this time. Plaintiff's counsel informed Defendants' counsel that he remains open to participating in settlement discussions if and when Defendants are so inclined.**

## 6. CONSENT

All parties ☐[have] ☒ have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

a. Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

**No modifications requested for depositions. The parties may take one deposition of each adverse party and of two other persons, exclusive of expert witnesses.**

**Interrogatories - The parties propose thirty (30) interrogatories per side.**

b. Limitations which any party proposes on the length of depositions.

**No more than one day of 6 hours.**

c. Limitations which any party proposes on the number of requests for production and/or requests for admission.

**The parties propose twenty-five (25) requests for production and twenty-five (25) requests for admissions per side.**

        d.        Other Planning or Discovery Orders

**None at this time.**

### 9. CASE PLAN AND SCHEDULE

        a.        Deadline for Joinder of Parties and Amendment of Pleadings:

~~June 1, 2023~~

<span style="color:red">Amendment by 3/31
Discovery 8/31
Dispo MTn by 10/2</span>

        b.        Discovery Cut-off:

~~October 5, 2023~~

<span style="color:red">Affirmative experts 6/20</span>

        c.        Dispositive Motion Deadline:

~~November 5, 2023~~

<span style="color:red">Rebuttal experts 7/20</span>

        d.        Expert Witness Disclosure

              1.        The parties shall identify anticipated fields of expert testimony, if any.

              (i)        Plaintiff anticipates endorsing the following experts and/or categories:

Plaintiff expects to endorse: his treating, DIME, and FPPA medical providers as non-retained experts concerning the injuries Plaintiff suffered and the causation of those injuries; an expert concerning the standard of care for vehicular pursuits by law enforcement; and an economist concerning Plaintiff's damages (including past and future lost wages and benefits). Plaintiff may also endorse experts concerning future medical treatment and expenses.

              (ii)        Defendants anticipate endorsing an expert in the reconstruction of motor vehicle collisions; an expert in the biomechanics of injury; an expert in the standard of care for vehicle pursuits by law enforcement; medical experts in the fields of physiatry (including rehabilitation and occupational medicine and/or functional capacity evaluations), orthopedics (including but not limited to spinal injuries); and Pain Management; and an economist to determine Plaintiff's past present and future economic damages.

              2.        Limitations which the parties propose on the use or number of expert witnesses.

**One specially retained expert per specialty; this excludes non-retained experts consisting of Plaintiff's treating/DIME/FPPA medical providers.**

3. The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before ~~August 5, 2023~~.

4. The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before ~~September 4, 2023~~.

   e. Identification of Persons to Be Deposed:

| NAME | RELATIONSHIP | DATE OF DEPOSITION | EXPECTED LENGTH OF DEPOSITION |
|---|---|---|---|
| Steven Wren | Plaintiff | TBD | Up to 6 hours |
| Sheriff Bill Elder | Defendant | TBD | Up to 6 hours |
| Lieutenant Bill Huffor | Defendant | TBD | Up to 6 hours |
| Deputy Scott Brettell | Defendant | TBD | Up to 6 hours |
| Deputy Nicholas Witherite | Defendant | TBD | Up to 6 hours |
| Deputy Jeremy Juhl | Defendant | TBD | Up to 6 hours |
|  |  |  |  |
| One or more expert witnesses of the parties | TBD | TBD |  |
| Other lay witnesses identified during the course of discovery | TBD | TBD |  |
|  |  |  |  |

   f. Deadline for Interrogatories:
~~August 4, 2023.~~                                                          7/17/23

   g. Deadline for Requests for Production of Documents and/or Admissions

~~August 4, 2023.~~

**10. DATES FOR FURTHER CONFERENCES**

12

a. Status conferences will be held in this case at the following dates and times:

_____.

b. A final pretrial conference will be held in this case on _____ at ____ o'clock ____ m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

### 11. OTHER SCHEDULING MATTERS

a. Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.

**None**

b. Anticipated length of trial and whether trial is to the court or jury.

**The parties anticipate a trial of 5 Days to a jury**

c. Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building,103 Sheppard Drive, Durango, Colorado 81303-3439.

**None**

### 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

### 13. AMENDMENTS TO SCHEDULING ORDER

**The Scheduling Order may be altered or amended only upon a showing of good cause.**

DATED this 10th day of February, 2023.

BY THE COURT:

_____
United States Magistrate Judge

APPROVED:

| | |
|---|---|
| __/s/ Zachary P. Mugge_ | _/s/ Bryan E. Schmid_ |
| Zachary P. Mugge | Bryan E. Schmid |
| Antero Law, LLC | El Paso County Attorneys Office |
| 1700 Broadway, Suite 640 | 200 South Cascade Avenue |
| Denver, CO 80290 | Colorado Springs, CO 80903 |
| Telephone: 720-990-5530 | Telephone: 719-520-7032 |
| E-mail: zmugge@anterolaw.com | Email: BryanSchmid@elpasoco.com |
| **Attorney for Plaintiffs** | **Attorney for Defendants** |